IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-01559-RBJ, consolidated with
Civil Action No. 18-cv-01797-RBJ

EXAMINATION BOARD OF PROFESSIONAL HOME INSPECTORS, and
AMERICAN SOCIETY OF HOME INSPECTORS, INC.,

      Plaintiffs,

v.

INTERNATIONAL ASSOCIATION OF CERTIFIED HOME INSPECTORS and
NICKIFOR GROMICKO a/k/a Nick Gromicko,

      Defendants.

---

## ORDER

---

This matter is before the Court on the following motions: defendants' motion for summary judgment against the American Society of Home Inspectors, Inc. ("ASHI") (ECF No. 58); defendants' motion for summary judgment against Exam Board Professional Home Inspectors ("EBPHI") (ECF No. 59); ASHI's motion for partial summary judgment (ECF No. 60); and EBPHI's motion for partial summary judgment (ECF No. 61). The Court also considers defendants' motion to strike exhibits and arguments (ECF No. 84) and defendants' amended motion to strike exhibits and arguments (ECF No. 91).

### I. FACTUAL BACKGROUND

Examination Board of Professional Home Inspectors ("EBPHI") filed the first case against defendants Nickifor Gromicko and the International Association of Certified Home Inspectors ("InterNACHI"), No. 18-cv-1559-RBJ. American Society of Home Inspectors

("ASHI") filed the second case against defendants Gromicko and InterNACHI, No. 18-cv-1797-RBJ.  The two cases have been consolidated for all purposes.  The following facts appear to be undisputed and are, in any event, assumed to be true.

## A. **The EBPHI case**

EBPHI administers and owns the National Home Inspectors Examination ("NHIE"), an exam many states use to license home inspectors.  In addition to its being a membership association for home inspectors, InterNACHI also offers a licensing exam for the home inspection industry.  Therefore, EBPHI and InterNACHI are competitors within the home inspection examination and licensing industry.  ECF No. 1 at 2.

Defendant Gromicko made numerous statements about EBPHI and the NHIE on InterNACHI's online forum, such as:

> The NHIE is a joke of an exam.  Meaningless piece of crap and a scam IMHO; Perhaps we'll sue them on your behalf.  Would you be interested? We'll pay for everything. . . .;
>
> The NHIE is a stupid piece of crap exam that asks questions outside of a home inspector's. . . standards of practice. . . . We stand ready to go to court for you against the EBPHI.
>
> The questions about basements are fine as basements are part of a home inspector's SOP . . . even in areas that don't have basements . . . the questions about radon and sprinklers are not. . . I can go to court for you and get an injunction forcing EBPHI to grade your exam without those questions.  Then through discovery, I'll find out everyone else who has ever failed the NHIE, and file a class action suit against the EBPHI . . . . It's not even a psychometrically valid exam and I can prove it in court.  They'll owe millions in lost revenue. . . . Just say go.
>
> The NHIE is a joke and now they're going to be a joke in front of a federal judge.

ECF No. 59-11.

In response to these statements, EBPHI filed the following claims against defendants Gromicko and InterNACHI: (1) defamation, (2) trade libel, (3) commercial disparagement, (4)

2

tortious interference with business expectancy, and (5) deceptive trade practices under the Colorado Consumer Protection Act.

**B. The ASHI case**

ASHI and InterNACHI are competitors in the home inspection industry.  Both companies provide memberships to independent home inspectors.  ECF No. 60-2 at 1.  Member home inspectors enjoy certain benefits, including being advertised to homebuyers on the associations' websites.  The claims and counterclaims giving rise to this suit involve both associations' websites.

ASHI's website has a "Find a Home Inspector" tool that allows homebuyers to search for home inspectors within their geographic area.  A tagline at the top of this webpage reads, "Educated. Tested. Verified. Certified."  ECF No 71-11.  When homebuyers conduct a search using this feature, the results page will depict relevant ASHI members along with their company name, contact details, and whether the inspector is an ASHI associate, inspector, or certified inspector, ASHI's three membership classes.

ASHI's website lists the criteria that home inspectors must meet to qualify for each membership class.  ECF No. 60-2 at 21.  An ASHI certified inspector is defined as "the highest level of ASHI membership."  To become ASHI certified, home inspectors must pass the NHIE; complete the ASHI standards of practice and ethics modules; have their inspection reports verified; and submit proof they have conducted at least 250 home inspections.  *Id.*  To become an ASHI inspector, individuals must pass the NHIE or their state's exam; complete the ASHI standards of practice and ethics modules; have their inspection reports successfully verified; and submit proof that they have conducted at least 75 home inspections.  *Id.* at 25.  Finally, ASHI

associates are "inspectors who have recently joined ASHI." *Id*. at 29.  To be an associate, individuals must complete the ASHI standards of practice and ethics education modules.

ASHI requires members to complete a number of things to maintain good standing within the organization.  For instance, members must complete continuing education requirements to remain in their membership class.  *Id*. at 10.  Further, they must submit home inspection reports for ASHI to verify depending on their class.  ASHI employs home inspector report writers who review members' submitted reports and determine whether they are "appropriately and correctly put together" and meet ASHI standards.  ECF No. 71-8 at 10–11.  Although ASHI associates must complete the standards of practice and ethics modules, they are not required to complete the continuing education requirements until after one year of membership.  *Id*. at 9.

In addition to its differentiating members based on ASHI membership classes, ASHI began listing whether member home inspectors had their backgrounds verified as well.  In the summer of 2017 ASHI began using a background verification logo to indicate which home inspectors had undergone successful background checks.  ECF Nos. 71-8 at 14; 71 at 17.  Although ASHI does not deny membership to convicted felons, it will not ascribe the background verification logo to individuals who have been convicted of felonies.  ECF No. 71 at 17.

InterNACHI, the larger of the two associations, was founded by defendant Gromicko, and also has an active online presence.  Mr. Gromicko continues to work for InterNACHI and describes his primary job responsibility as handling consumer and member complaints.  ECF No. 60-4 at 3.  As a part of this work he responds to complaints and comments appearing on InterNACHI's online forum.  ECF No. 61-10.  In fact, Mr. Gromicko is quite active on this forum, and his forum activity forms the basis for ASHI's claims against defendants.

On July 17, 2017 Mr. Gromicko used InterNACHI's online forum to comment about a recent Washington Post article that purportedly recommended homebuyers use InterNACHI home inspectors rather than ASHI's. In response to the article Mr. Gromicko posted "[t]he reporter failed to note that ASHI (American Society of Home Inspectors) was taken over by NAMBLA on Friday." ECF No. 60-10 at 3. He followed up by stating "It's a good thing they were taken over too. Most of the few members they have left are beginning to suffer from rigamortis [sic]." An InterNACHI member replied to the forum post and stated that he searched NAMBLA online and it was not the result he was expecting. ECF No. 60-10 at 4. Yet another member replied "[m]e either, creepy and not cool." *Id*. at 4.

NAMBLA is alleged to be an acronym for the North American Man-Boy Love Association. It is thus alleged to be an "actual organization that promotes sex between grown men and young boys and is working to abolish age of consent laws." ECF No. 58-12. The organization is commonly referred to in popular culture, including in an episode of *South Park* and several episodes of *The Daily Show*. ECF Nos. 58-11, 58-12. ASHI has no connection to NAMBLA, and no NAMBLA-ASHI merger occurred. ECF No. 60-2 at 4.

Following the commencement of this lawsuit, Mr. Gromicko continued posting about ASHI on his online forum. In one such comment he wrote, "ASHI is a statistical mass murder [sic] of children on a grand national scale. I'd sooner work with Jeffrey Dahmer. He only killed and ate 17 people." ECF No. 60-2 at 5. Perhaps it goes without saying, but ASHI does not engage in the mass murder of children. *Id*. at 5.

As a result of these statements ASHI filed suit against Gromicko and InterNACHI. ASHI alleged the following claims: (1) defamation, (2) trade libel, (3) commercial disparagement, and (4) deceptive trade practices under the Colorado Consumer Protection Act. Defendants filed two

counterclaims against ASHI: (1) false advertising under the Lanham Act, and (2) tortious interference with business expectancy.

## II. PROCEDURAL BACKGROUND

EBPHI filed its complaint against defendants on June 21, 2018.  ECF No. 1.  ASHI first filed its complaint against defendants on July 16, 2018.  No. 18-cv-1797-RBJ, ECF No. 1.  On September 25, 2019 this Court issued an order to consolidate the two related actions, and EBPHI became the lead plaintiff.  ECF No. 50.  On April 9, 2020 all parties filed motions for summary judgment.  ECF Nos. 58–61.  All parties filed their responses to the motions on May 14, 2020.  ECF Nos. 71–74.  On June 4, 2020 the parties filed their replies.  ECF Nos. 86–89.  Defendants also filed a motion to strike exhibits and arguments in Plaintiff's responses.  ECF No. 84.  Defendants subsequently filed an amended motion to strike on June 17, 2020.  ECF No. 91.  ASHI filed its response on July 10, 2020.  ECF Nos. 98, 99.  Defendants filed their reply on July 29, 2020.  ECF No. 103.  These matters are ripe for review.

## III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## IV. ANALYSIS

### A. <u>Defendants' Motion to Strike</u>

I address defendants' motion to strike first because it will affect what evidence the Court may consider in addressing the motions for summary judgment.  Defendants filed an amended motion to strike certain exhibits and arguments that plaintiffs referenced in their motions before this Court.  ECF No. 91.  Defendants move to strike inadmissible hearsay evidence on which ASHI relies; new allegedly defamatory comments made by defendants that were not alleged in the complaint; and the testimony of plaintiffs' expert Robert Fisher.

1. <u>Whether ASHI's support for NAMBLA's meaning should be stricken</u>

Defendants argue that ASHI relied on inadmissible hearsay evidence in its motions for summary judgment and its responses to defendants' motions.  ECF No. 91 at 3.  Specifically, defendants move to strike (1) the Wikipedia quotations that ASHI introduced to establish that "NAMBLA is the acronym for the North America Man/Boy Love Association," and (2) another website's statement that "NABMLA was founded in 1978 and acts as an advocacy organization for the abolition of age-of-consent laws and the legalization of sexual acts between grown men and young boys."  *Id.*

The Court agrees that the two website statements at issue are hearsay under the Federal Rules of Evidence because plaintiff attempts to introduce both statements to prove the truth of the matter they assert.  Plaintiffs have pointed to no hearsay exception under which these statements fall.  The Court also notes that Wikipedia articles can be edited and amended by any

person at any time and are therefore not reliable, competent evidence. Further, plaintiffs have not authenticated either of the statements. The Court therefore strikes both pieces of evidence from the summary judgment record and does not consider them when addressing the parties' motions for summary judgment.

In so doing, however, the Court notes that defendants repeatedly make unfounded, bizarre arguments in their motions and responses that NAMBLA is not a real organization, yet they simultaneously introduce evidence demonstrating that NAMBLA *is* real. In an attempt to argue that NAMBLA's existence is nothing more than a conspiracy theory, defendants persistently compare NAMBLA to well-known mythological or conspiratorial entities, including Sasquatch, the Seattle kraken, the Illuminati, and the New World Order. They also reference Mordor, a city in J.R.R. Tolkien's fictional Middle Earth. The Court find these arguments unimpressive, meritless, and a waste of the Court's time. While the Court strikes the evidence mentioned above, the Court does consider the evidence defendants proffer regarding NAMBLA.

2. <u>Whether ASHI's inclusion of a new comment should be stricken</u>

Defendants next argue that defendant Gromicko's comment that ASHI is a mass murderer of children should be stricken. The statement reads, "ASHI is a statistical mass murder [sic] of children on a grand national scale. I'd sooner agree to work with Jeffrey Dahmer. He only killed and ate 17 people. One way or the other, I'm going to stop you." ECF No. 91 at 5. Defendants argue that the Court should strike the comment because it was made well after this case was filed and is not the basis for any claims before the Court.

In support of their motion defendants first argue that the Dahmer comment is irrelevant because ASHI did not reference this comment in its complaint and did not amend its pleadings to include it. ECF No.91-5 at 6. I agree with defendants that the Dahmer comment cannot be used

Case 1:18-cv-01559-RBJ   Document 133   Filed 02/10/21   USDC Colorado   Page 9 of 40

to support a separate claim for defamation because it was not mentioned in this complaint, and ASHI did not seek leave to amend their complaint to include it.

Defendants also argue that admitting the Dahmer comment would violate the prohibition against propensity evidence. ASHI argues that "[e]ven if this additional defamatory statement is untimely for summary judgment or as part of this action, it is nonetheless relevant and admissible to show Mr. Gromicko's continued pattern of intending to cause harm to ASHI." ECF No. 99 at 11. Plaintiff's argument, without more, is insufficient to establish habit or routine practice under Rule 406. The Court will therefore not consider the Dahmer comment when deciding the motions for summary judgment. However, the Court reserves ruling on whether the Dahmer comment may be admissible for other purposes in this litigation.

   3. <u>Whether ASHI's reliance on the Fischer report should be stricken</u>

The Court does not address defendants' argument that the Fischer report should be stricken because that same argument is the subject of another pending motion before this Court. ECF No. 57. At the trial preparation conference on February 5, 2021 the parties scheduled a *Daubert* hearing for February 17, 2021. Thus, defendants' motion to strike is GRANTED in part and DENIED in part.

## B. **The Parties' Motions for Summary Judgment**

Both plaintiffs allege the following claims against defendants: (1) defamation, (2) trade libel, (3) commercial disparagement, and (4) violation of the Colorado Consumer Protection Act. Plaintiff EBPHI also alleges tortious interference with business expectancy against defendants. Defendants filed two counterclaims against ASHI: (1) false advertising under the Lanham Act, and (2) tortious interference with business expectancy.

Defendants argue they are entitled to summary judgment as to all of ASHI's and EBPHI's claims.  ECF Nos. 58, 59.  ASHI argues it is entitled to (1) partial summary judgment on the issue of whether the NAMBLA comment is defamatory per se, and (2) summary judgment on defendant InterNACHI's counterclaims.  ECF No. 60 at 6,9.  Finally, EBPHI argues it is entitled to summary judgment on the issue of liability for its defamation claim.  ECF No. 61 at 5.  Because the same claims are alleged by multiple parties, and multiple parties move for summary judgment on the same claims, I proceed claim by claim.

1. Defamation Claims

Both ASHI and EBPHI argue that defendants defamed them by making false, disparaging comments about them on InterNACHI's online forum.  Defendants allegedly defamatory comment about ASHI is that ASHI had been taken over by NAMBLA ("the NAMBLA comment").  Defendants allegedly defamatory comment about EBPHI was that the NHIE, an exam designed and administered by EBPHI, was not psychometrically valid ("the NHIE comment").

The tort of defamation affords a cause of action to individuals whose reputations have been damaged by the publication of a false, defamatory statement.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).  "Defamation is a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage."  *Gordon v. Boyles*, 99 P.3d 73, 78 (1940) (citing *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994)).  Courts have acknowledged that permitting individuals to protect their reputations "from unjustified invasion and wrongful hurt reflects . . . our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty."  *Rosenblatt v. Baer*, 383 U.S. 75, 92–93, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966) (Stewart, J., concurring).

While preserving and protecting human dignity is at the root of our system of justice, so too is the idea that individuals should be able to speak freely. Any law regulating speech raises First Amendment and freedom-of-speech concerns. In *Gertz v. Robert Welch, Inc.*, the Supreme Court included this oft-cited line: "[u]nder the First Amendment there is no such thing as a false ideal. However, pernicious an opinion may seem, we depend for its correction not on the judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." 418 U.S. at 340–41. Thus, when deciding issues involving defamation and regulation of speech, courts must be mindful of the tension between protecting a person's reputation from ridicule and regulating speech in a society that prides itself on freedom of expression. Of utmost importance, the Court must not render a judgment that "constitute[s] a forbidden intrusion on the field of free expression." *Milkovich*, 497 U.S. at 17. Keeping this in mind, the Court turns to plaintiffs' defamation claims.

<u>a. ASHI's defamation claims</u>

ASHI contends it was defamed when defendant Gromicko, acting in his capacity as an InterNACHI employee, made the NAMBLA comment on the InterNACHI online forum. ASHI argues it is entitled to partial summary judgment on its claim for defamation because (1) the NAMBLA comment constitutes defamation per se, and (2) ASHI need not prove special damages. ECF No. 60 at 6. Defendants argue they are entitled to summary judgment because no reasonable person could understand the NAMBLA comment to be an expression of fact. ECF No. 58 at 6.

Determining whether a statement is defamatory is a question of law. *Walker v. Associated Press*, 417 P.2d 486 (Colo. 1966). However, as noted above, the Court must remain cognizant of First Amendment concerns when determining whether a statement is defamatory.

As the Supreme Court stated in *New York Times Co. v. Sullivan*, "[w]hatever is added to the field of libel is taken from the field of free debate."  376 U.S. at 272 (internal quotations omitted).  In line with this principle, courts have imposed constitutional limits on the types of speech that can be considered defamatory.  For instance, public officials and public figures—who often are the topic of expressive speech—are held to a higher standard than private plaintiffs when bringing defamation suits.  *Id*. at 292.

Another limitation on defamation suits are statements that embody "parody, fantasy, rhetorical hyperbole, and imaginative expressions that cannot reasonably be interpreted as stating actual facts about an individual."  *Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010).  Statements are therefore protected when they could not reasonably be interpreted as stating factual content.  *Milkovich*, 497 U.S. at 20 (citing *Greenbelt Cooperative Publishing Assn. v. Bresler*, 398 U.S. 6 (1970)).  The underlying principle in these cases is "[b]ecause no reasonable person would take these types of speech as true, they simply cannot impair one's good name."  *Mink*, 613 F.3d at 1005; *see also Bucher v. Roberts*, 595 P.2d 239, 242 (Colo. 1979) (noting that "the abusive statement here could not have reasonably been understood to be taken literally or seriously and amounted to no more than rhetorical hyperbole.").  Thus, in deciding whether a statement is defamatory the Court must consider whether a reasonable person could "conclude that the speaker was communicating an actual fact."  *Keohane*, 882 P.2d at 1303 (citing *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983)).  Importantly, this reasonable person standard does not require that a majority believe the statement to be true.  It requires "a substantial and respectable minority" to believe the statement is factual.  *Keohane*, 882 P.2d at 1305.  When applying the reasonable person standard, courts consider the phrasing of the

statement, the context of the entire statement, and the underlying circumstances surrounding the statement. *Id.*

In considering the phrasing, the context, and the circumstances of the NAMBLA comment, I find that no reasonable person, much less a "substantial and respectable minority" could reasonably believe that the NAMBLA comment is factual.  NAMBLA is an acronym for an organization that advocates for removing age-of-consent laws and promotes pedophilia.  ECF No. 58-12.  ASHI is a national association of home inspectors.  ECF No. 1 at 2.  There is no similarity or common purpose shared between the two organizations.  Furthermore, defendants, competitors of ASHI, made the statement on its website alongside other statements incapable of being factual.  Defendant Gromicko also wrote that the ASHI-NAMBLA merger was a good thing because most of ASHI's members suffered from rigor mortis.  Obviously ASHI's members could not suffer from a condition that only affects the deceased.  The Court finds that no reasonable person could believe that a professional home inspectors' association merged with a fringe, highly vilified pro-pedophilia group, particularly when such a statement comes from none other than a loud-mouthed competitor.  While Gromicko's comments are lewd, distasteful, immature, and ludicrous, they fall into the category of "parody, fantasy, rhetorical hyperbole, and imaginative expressions that cannot reasonably be interpreted as stating actual facts. . . ."  *Mink*, 613 F.3d at 1005.  Accordingly, the Court finds that the NAMBLA comment is not defamatory as a matter of law.  Thus, defendants' motion for summary judgment is GRANTED as to ASHI's defamation claim.  ASHI's motion for partial summary judgment is DENIED.

b.  EBPHI's defamation claim

EBPHI contends that it was defamed when defendant Gromicko stated that the NHIE, the exam EBPHI administers and owns, was not psychometrically valid.  EBPHI argues it is entitled

to summary judgment as to the issue of liability.  Defendants claim that they are entitled to summary judgment because the NHIE comment was constitutionally privileged and plaintiffs cannot demonstrate (1) actual malice, or (2) actual damages.  I begin with defendants' arguments.

i. Whether the statement was constitutionally privileged

As mentioned at length above, as laws that regulate speech, defamation laws are often at odds with the constitutional values of freedom of speech and expression.  To balance this tension, "the privilege of fair comment was incorporated into the law of defamation." *Keohane*, 882 P.2d at 1298.  The privilege of fair comment protects numerous types of speech from being actionable in a defamation suit, including statements on matters of public concern or those representing the speaker's actual opinions that are not made solely for the purpose of causing harm.  *Id.* (citing *Milkovich*, 497 U.S. at 13–14.).  Defendants argue that the NHIE comment was both on a matter of public concern and a statement of opinion.

Determining whether a statement involves a matter of public concern is a question of law that must be determined on a case by case basis.  *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1034 (10th Cir. 2013); *Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 18 (Colo. App. 1996).  A statement is on a matter of public concern when "it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published."  *Williams*, 943 P.2d at 17.  Additionally, if a statement relates to a matter "of any political, social, or other concern to the community . . . or giv[es] information to the public for purposes of education, amusement, or enlightenment," then it will fall under the public concern privilege.  *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008).

In determining the public concern issue courts must also consider whether the statement could be deemed private, or if it involves private parties. "A statement made in a purely private context does not involve a matter of public concern." *People v. Ryan*, 806 P.2d 935, 939 (Colo. 1991). "It is inappropriate to require that defamatory false statements must be made with 'actual malice' in situations . . . where one private person disseminates defamatory statements about another private individual in the victim's community." *Id.* The balance should be struck in favor of a private plaintiff "if his or her reputation has been injured by a non-media defendant in a purely private context." *Williams*, 943 P.2d at 18.

In addition to considering whether the statement is public or private in nature, courts must also analyze the "content, form, and context of the statements, in conjunction with the motivation or 'point' of the statement as revealed by the whole record." *Barrett v. Univ. of Colorado Health Scis. Ctr.*, 851 P.2d 258, 263 (Colo. App. 1993). While all of the above considerations are undoubtedly important, they must be considered against Colorado law's emphasis on broadly interpreting the public opinion privilege. *Hoeper v. Air Wisconsin Airlines Corp.*, 232 P.3d 230 (Colo. App. 2009), *aff'd*, 320 P.3d 830, *rev'd and remanded*, 571 U.S. 237 (2014). Once a court determines that a statement involves a matter of public concern, the plaintiff faces an increased burden and must prove the speaker acted with actual malice, rather than mere negligence. *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (Colo. 1982).

Defendants contend that the NHIE comment involved a matter of public concern because the NHIE is a licensing exam in twenty-nine states, and the public is harmed when competent home inspectors fail an overly broad exam. ECF No. 59 at 11. Plaintiff argues that the comment was not on a matter of public concern because the NHIE comment implied the test was too hard, and "defendants have presented no evidence that the public is in danger because the NHIE tested

more items than [d]efendants believed it should." ECF No. 74 at 14. However, whether the statement is on a matter that does or does not put the public in danger is not the dispositive question this Court must answer. The question is instead whether "the public may reasonably be expected to have a legitimate interest in what is being published." *Williams*, 943 P.2d at 17.

To answer that question, I analyze the context, form, and content of the NHIE comment. Here, defendants stated that a professional licensing exam offered in twenty-nine states was not psychometrically valid because it tested subjects falling outside the industry's standards of practice. The fact that this exam is offered in a majority of states suggests that it "has the potential to impact members of the public or the public as a whole." *Diversified Management, Inc.*, 653 P.2d at 1108 (holding that the allegedly defamatory statement was on a matter of public concern where it regarded land in which members of the public had a proprietary interest). Additionally, the NHIE comment was made on a website, i.e. an online, open forum accessible to virtually any member of the public with internet access. Finally, the context of the speech further supports that it was made on a matter of public concern. It was made in response to the complaint of a third party—who is not involved this lawsuit—that she and her husband were "prepared" and "studied hard" for the NHIE but only recognized a handful of questions and ultimately failed the test. ECF No. 58-11 at 2. Mr. Gromicko was responding to a member of the public's concerns about the NHIE when he made the comment. Thus, the content, form, and context of the NHIE comment all support the conclusion that it involved a matter of public concern.

Plaintiff EBPHI counters that the speech was not on a matter of public concern because EBPHI is a private plaintiff and the statement was made by a non-media defendant. While it is true that statements made in a purely private context are typically not considered issues of public

concern, this statement was not made in such a context.  A statement made on an online, public forum to a third party is not purely private, nor is a statement that addresses the validity of a national licensing exam.

EBPHI next argues that the NHIE comment was motivated by self-interest, and it therefore cannot fall under the public concern privilege.  ECF No. 74 at 14.  I disagree.  Plaintiff is correct in implying that courts should consider the speaker's motivation when determining whether a statement involves a matter of public concern; however, the fact that a speaker is self-motivated does not independently resolve the issue.  To support its argument that a speaker's self-motivation renders a statement private, EBPHI relies on *Spacecon*.  *Spacecon* involved a documentarian who made a film about an organization's mistreatment of their workers.  The filmmaker was a consultant for the United Brotherhood, a union that paid for the film and that was "was embroiled in a campaign against Spacecon."  *Spacecon Specialty Contractors, LLC*, 713 F.3d at 1038.  The court acknowledged that the facts suggested the defendant had a personal vendetta against plaintiff, but it nonetheless found that the film involved a matter of public concern.  *Id. Spacecon* therefore demonstrates that even a self-motivated speaker can be protected from a defamation claim when speaking on a matter of public concern.

In *Kemp*, the plaintiff sent a letter to a United States senator alleging that her employer engaged in discriminatory termination practices.  *Kemp v. State Bd. of Agriculture*, 803 P.2d 498 (Colo. 1990)  The *Kemp* court acknowledged that "Kemp's point in sending a letter was partially, if not entirely, motivated by self-interest."  *Kemp*, 803 P.2d at 503.  However, the court still held that it involved a matter of public concern because it involved matters in which the public had an interest.  *Id.* at 504.  Similarly, in *Connick,* a deputy district attorney who had been transferred to a less favorable department solicited writings disparaging the district attorney

around the office.  The Court acknowledged that most of the writings were "mere extensions of Myers' dispute over her transfer."  *Connick v. Myers*, 461 U.S 138, 148 (1983).  However, notwithstanding her self-interested motivation, the Court found that some of the statements touched on matters of public concern."  *Id.* at 149.  Thus, "the mere fact that a [speaker's] statement is an outgrowth of his personal dispute does not prevent some aspect of it from touching upon matters of public concern. . . ."  *Kemp*, 803 P.2d at 503 (citing *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 452 (3d Cir. 1985)).

There is no question that the defendants were self-motived when making these comments on InterNACHI's website.  The record is replete with statements by defendants suggesting that they will do whatever it takes to weed out their competition and form a monopoly over the home inspection industry.  As in *Kemp*, it is possible that defendants' arguments were entirely motivated by self-interest.  However, defendants' self-interested motivation by itself does not remove the statement from the realm of public concern.  The Court must view that motivation in conjunction with the statement's content, form, and context.  As mentioned above, those three considerations all indicate that the speech involved a matter of public concern.  The Court therefore finds that the NHIE comment involves a matter of public concern.

### ii. Actual Malice

When a statement involves a matter of public concern, plaintiffs are held to the higher standard of demonstrating that the speaker acted with actual malice, as opposed to mere negligence.  *Spacecon Specialty Contractors, LLC*, 713 F.3d at 1043.  Determining whether there is sufficient evidence to support a finding of actual malice is a question of law.  *Lockett v. Garrett*, 1 P.3d 206, 2010 (Colo. App. 1999).  To establish actual malice, EBPHI must "show by clear and convincing evidence [Gromicko] published the [statement] with knowledge of its

falsity or in reckless disregard of the truth." *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1122–23 (Colo. App. 1992).  "Actual malice may be inferred by the finder of fact if an investigation is grossly inadequate." *Kuhn v. Tribune-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981) (citing *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967)).  Further, a speaker who willfully chooses not to learn the truth prior to making an allegedly false statement can be found to have acted with actual malice.  *McIntyre*, 194 P.3d at 530.  The Court finds there is sufficient evidence in the record to support a finding of actual malice.

The record establishes that Mr. Gromicko had knowledge of what processes were necessary to make an examination psychometrically valid.  He admitted that he read both books and articles on psychometrics and exam writing when creating his own home inspection licensing examination.  ECF No. 74-6 at 4.  Additionally, InterNACHI's website at one point discussed the psychometric validity of its own test, and defendant Gromicko authored that portion of the website, though it has since been removed.  ECF No. 74-8 at 3.  That part of the website read, "there are four essential factors related to the psychometric validity of any test.  They are validity, reliability, fairness, and legal defensibility."  ECF No. 74-7 at 3.  The website went onto say,

> Validity is the most fundamental consideration in psychometric measures according to the American Educational Research Association, American Psychological Association, and National Council on Measurement in Education.  It's the most important criteria for the quality of a test.  The term validity refers to whether or not the test measures what it claims to measure.  On a test with high validity, the items will be closely linked to the test's intended focus.

The website then states that InterNACHI's exam meets the four prongs of psychometric validity and explains why.

To survive summary judgment on this issue, EBPHI must present evidence to support an inference that Gromicko had knowledge that the statement was false or acted with reckless disregard for its falsity.  EBPHI has presented evidence demonstrating that defendant Gromicko knew about what processes must be followed to ensure a test is psychometrically valid.  Not only that, EBPHI presented evidence that Gromicko was intimately involved with the creation of InterNACHI's own test, further bolstering their argument that Gromicko is familiar with the science of psychometrics.  Finally, EBPHI presented evidence that testing outside of the standards of practice is not a factor that renders a test psychometrically invalid.  Thus, a reasonable jury could find that when defendants made the NHIE comment, they acted with reckless disregard for its truth because they had knowledge that the standards of practice are irrelevant to a validity determination.  The Court therefore finds that the record supports a finding of possible malice, and the issue should go to the jury.

### iii. Whether the NHIE comment was an opinion

Defendants next argue that EBPHI's defamation claim is not actionable because it was a statement of opinion and there is no evidence of its falsity.  ECF No. 59 at 13.  I again disagree. While courts have recognized that opinions are constitutionally protected in certain instances, that protection is not absolute.  *NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 9 (Colo. 1994).  A statement characterized as an opinion "will support a defamation action if the language is defamatory and the underlying defamatory facts which provide a basis for the opinion are false and are not disclosed in the context of the broadcast."  *Burns*, 659 P.2d at 1360. The Restatement (Second) of Torts explains that "a defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts."  Restatement (Second) of Torts § 566 (1977).

In *Burns* the Colorado Supreme Court announced factors for courts to consider when differentiating between fact and opinion. *Burns*, 659 P.2d at 1360. The Supreme Court, however, rejected the "artificial dichotomy" between fact and opinion statements in *Milkovich*. 497 U.S. at 19. Although *Milkovich* dispensed with the fact-opinion dichotomy, courts still rely on the factors enumerated in *Burns* to distinguish between fact and opinion when engaging in the two-step analysis set forth in *Milkovich*. *Keohane*, 882 P.2d at 1299.

The *Milkovich-Burns* analysis requires courts to consider (1) whether the statement contains or implies a verifiable fact, and (2) whether the statement is reasonably susceptible to being understood as an actual fact. *Id.* (citing *Milkovich*, 497 U.S. at 21). When analyzing the first *Milkovich* prong, courts consider the following *Burns* factors: (1) "whether the statement complained of is 'cautiously phrased in terms of apparency,'" (2) "the entire published statement . . . in context," and (3) all the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed . . . ." *Burns*, 659 P.2d at 1360.

With respect to the first factor, there is no evidence that the statement was "cautiously phrased in terms of apparency." *Id.* When analyzing this factor courts look for things that qualify the statement such as the phrase "in my opinion." *Id.* Here, Gromicko does not use language to suggest that the NHIE comment was mere opinion. He does not caveat or cabin his statement in any way. To the contrary, he implies that the test's psychometric validity is a verifiable fact by stating that he can prove the NHIE is invalid in court, which also suggests he has evidence of this "fact." He goes onto say that because he can prove the exam is psychometrically invalid, EBPHI will be forced to pay millions. Nothing about Mr. Gromicko's

statement suggests that it was cautiously phrased.  Thus, the first *Burns* factor weighs in favor of finding that the statement implies or contains a verifiable fact.

The second *Burns* factor, the statement's context, similarly suggests that the statement is a verifiable fact instead of an opinion.  Again, the context surrounding the NHIE comment suggests that Gromicko has evidence that will support his statement that the test is not psychometrically valid.  He states, "I can go to federal court for you and get an injunction."  ECF No. 59-11 at 4.  He goes onto say that "he can file a class action suit against the EBPHI and all of their current and former employees who knew about this."  *Id.*  And, finally, he says that he can prove the test is not psychometrically valid.  Each of these statements imply that the NHIE comment is a fact that is provable in court.  This factor thus also weighs in favor of finding that the statement contains or implies a verifiable fact.

Finally, the third factor, the circumstances surrounding the NHIE comments, similarly weighs in EBPHI's favor.  Nick Gromicko is the founder of the largest home inspectors' membership association in the country.  He made this comment on his company website where he communicates with current and aspiring home inspectors.  Further, he disseminated the comment on a public forum and suggested that he would be able to pay for and help certain individuals vindicate their rights in an action against EBPHI.  Using his position of a power as an industry leader, he disseminated this statement to members of the industry and implied that it was factual and that he had evidence to support it.  Thus, all three *Burns* factors lead the Court to find that the NHIE comment implies a verifiable fact under the first prong of *Milkovich*.

The second *Milkovich* prong requires the Court to consider "whether reasonable people would conclude that the assertion is one of fact."  *Keohane*, 882 P.2d at 1299 (citing *Milkovich*, 497 U.S. at 21).  This determination parallels my analysis above.  Mr. Gromicko is an industry

leader making comments on a website about the home inspection industry.  Additionally, InterNACHI created its own home inspection exam and has extensive knowledge of the process for creating and developing such an examination.  When he made the NHIE comment, he was speaking to both existing and prospective members of the home inspection industry.  At the time Mr. Gromicko spoke he was the founder of the largest home inspector membership association in the country, placing him in a position of substantial influence within the industry.  Further, defendant Gromicko repeatedly implied that he possessed evidence that would enable him to prove the exam invalid in court.  The Court finds that "reasonable people would conclude that the assertions [were] ones of fact." *Id.*  The Court thus concludes that while the NHIE comment involves a matter of public concern, it is not an opinion that warrants full constitutional protection because it implies verifiable fact.

### iv. Whether the NHIE comment is defamatory per se or defamatory per quod

The Court must next determine whether the NHIE comment is defamatory per se or defamatory per quod.  EBPHI argues the statement is defamatory per se, while defendants ague it is defamatory per quod.  A statement is per se defamatory when it carries "its defamatory imputation on its face" and is "specifically directed at a particular person."  *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016); *see also Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009).  A statement is defamatory per quod if it requires innuendo or extrinsic evidence to establish its defamatory nature.  *Keohane*, 882 P.2d 1293.  "In evaluating a statement. . . alleged to be libelous per se, the court must interpret the statement alone, without aid of inducements, colloquialisms, innuendos, and explanatory circumstances."  *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 517 (10th Cir. 1987).  Traditional categories of defamation per se include "imputation of (1) a criminal offense; (2) a loathsome

disease, (3) a matter incompatible with the individual's business, trade, profession or office; or (4) serious sexual misconduct."  Restatement (Second) of Torts § 570 (1977); *see also Gordon v. Boyles*, 99 P.3d 75 (Colo. App. 2004).  If the statement is defamatory per quod plaintiffs must prove actual damages, while damages are presumed if the statement is per se defamatory. *McGettigan*, 173 F. Supp. 3d at 1126.

Here, the statement is that the NHIE is not a psychometrically valid exam, and that defendants can prove its invalidity in court.  The meaning of the statement can be derived "on its face," and the statement is clearly directed at EBPHI, whom Gromicko threatens to sue.  Further, understanding the statement requires no "innuendo or extrinsic evidence."  *Keohane*, 882 P.2d 1293.  Finally, the statement falls into the traditional categories of defamation per se because it accuses EBPHI of administering an invalid examination.  Therefore, the statement is on "a matter incompatible with [EBPHI's] business."  Restatement (Second) of Torts § 570 (1977). For the above reasons, the Court finds that the statement is defamatory per se.[1]

## v. The alleged falsity of the NHIE comment and special damages

The Court briefly addresses defendants' remaining two arguments with respect to EBPHI's defamation claim.  First, defendants argue that there is no evidence in the record to support that the NHIE comment was false.  EBPHI counters by moving for summary judgment and asking this Court to find that the NHIE was psychometrically valid as a matter of law.  Both parties cite to evidence in the record to support their positions.  Defendants cite to the industry's practice standards and the fact that EBPHI modified their exam after the NHIE comment was made.  Plaintiff points to the process and science of psychometrics and the steps that EBPHI took

---

[1] If a defamation claim involves statements that are defamatory per se, plaintiffs are typically not required to prove actual damages.  However, when defamatory per se statements are on a matter of public concern, plaintiffs are required to prove damages.  Thus, even though the Court holds that the statements are defamatory per se, this holding does not relieve plaintiff of its duty to prove damages.  .

when creating its exam.  EBPHI also points to several states that have adopted the NHIE and statutorily require all professional licensing exams to be psychometrically valid.  The parties proffer conflicting evidence on whether the exam is psychometrically valid, which is a material fact underpinning EBPHI's claim.  A genuine factual dispute therefore exists, and neither party is entitled to summary judgment on this issue.

Second, defendants argue that plaintiff has not proven that the NHIE comment resulted in actual damages to EBPHI.  Plaintiff has submitted testimony from an expert who stated that the number of test takers for EBPHI's exam decreased after defendants' comment.  ECF No 74-1.  Plaintiff has also offered test records from the State of Florida, the only state to offer both the NHIE and InterNACHI exams, which show that the number of NHIE test takers dropped following the comment.  These pieces of evidence create a factual dispute on the issue of damages sufficient for plaintiff to survive summary judgment.

In summary, with respect to EBPHI's defamation claim against defendants, the Court holds that: (1) the NHIE comment referenced a matter of public concern; (2) there is sufficient evidence in the record to indicate actual malice; (3) the comment was not an opinion entitled to constitutional protection because it implied a verifiable fact; (4) that the comment constitutes defamation per se; (5) a genuine factual dispute exists as to whether the comment was false; and (6) a genuine factual exists as to whether plaintiff has sustained damages.  Thus, EBPHI's motion for partial summary judgment on the issue of liability is DENIED.  Defendants' motion for summary judgment as to EBPHI's defamation claim is also DENIED.

2. Tortious Interference Claims[2]

---

[2] EBPHI asserted as its Fourth Claim tortious interference with business expectancy.  ECF No. 1 in No. 18-cv-1559-RBJ, at 1, 15.  ASHI suggested in the introductory paragraph of its complaint that it was asserting tortious interference, but no tortious interference claim was in fact asserted.  *See* ECF No. 1 in No. 180cv01797-RBJ at 1, 15 (omitting a Fourth Claim).  Further, the claim is not mentioned anywhere else in the complaint, nor is it mentioned

EBPHI filed a tortious interference with business expectancy claim against InterNACHI, and defendant InterNACHI filed a tortious interference counterclaim against ASHI.  Defendants move for summary judgment on EBPHI's tortious interference claim.  ASHI moves for summary judgment on InterNACHI's counterclaim.

Tortious interference with business expectancy is an intentional tort actionable under Colorado law.  The tort applies to those who "intentionally and improperly interfere with another's prospective contractual relation."  Restatement (Second) of Torts § 766 (1979).  The tort applies to those who either (1) induce or cause a "third person to not enter or continue the prospective relation," or (2) prevent "the other from acquiring or continuing the prospective relation."  *Id.*  Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim.  However, they must demonstrate that the tortfeasor employed intentional and improper means to prevent a contract's formation.  *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

Section 767 of the Restatement typically applies to tortious interference claims; however, an exception exists when the claim arises among business competitors.  Tort law recognizes a business competition privilege because "competition is a necessary or desirable incident of free enterprise."  *Restatement 768, Cmt. e.*  The Restatement explains the business competition privilege as follows:

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> > (a) the relation concerns a matter involved in the competition between the actor and the other and
> > (b) the actor does not employ wrongful means and
> > (c) his action does not create or continue an unlawful restraint of trade and

---

in ASHI's motions.  The Court therefore finds that this claim was not pled with particularity and is not a claim by ASHI in this suit.

(d) his purpose is at least in part to advance his interest in competing with the other. . . .

*Id*. § 768.  Competitors are therefore permitted to exert economic pressure over one another and will not be liable for tortious interference with business expectancy so long as the four factors in § 768(1)(a)-(d) are satisfied.

There is no dispute over whether §768(1)(a), (c), and (d) are satisfied.  Based on the facts underlying the parties' claims, the parties were business competitors, did not create illegal restraints on trade, and acted to advance their own business interests.  The Court must therefore determine whether InterNACHI's or ASHI's conduct constituted wrongful means under §768(1)(b), thereby precluding the business competition privilege from applying to either ASHI's claim or InterNACHI's counterclaim.

The Colorado Supreme Court has determined that the term "wrongful means" should be interpreted narrowly and "is not open-ended."  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 493, 502 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996).  In Footnote 6, the *Amoco Oil Co.* court explains that certain types of conduct—physical violence, fraud, civil suits, and criminal prosecutions—fall into the Restatement's "wrongful means" category.  However, that list is not exhaustive.  Other types of conduct can qualify as wrongful if it is "capable of forming the basis for liability of the actor."  *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1197 (Colo. App. 2009).  Such conduct includes that which is "wrongful by reason of a statute or other regulation [or] a recognized rule of common law. . . ."  *Id*.  It also includes making statements that are defamatory or contain a "disparaging falsehood."  *Id.* (citing *Downey Chiropractic Clinic v. Nampa Rest Corp.*, 900 P.2d 191, 194 (1995)).

If a court finds that a party used wrongful means, the court must next determine whether there is sufficient evidence to establish an inference of injury, i.e., whether the tortfeasor's

wrongful conduct prevented the plaintiff from forming a contract.  This court, when applying

Colorado law stated, "[i]n order to qualify as a protected relationship, there must be a reasonable

likelihood or probability that a contract would have resulted; there must be something beyond a

mere hope." *Crocs, Inc. v. Effervescent, Inc.,* 248 F. Supp.3d 1040, 1059 (D. Colo. 2017).  In

*Klein v. Gryberg*, the Tenth Circuit applied Colorado law and similarly held there was no

tortious interference where the prospective contracts were too speculative.  44 F.3d 1497, 1506

(10th Cir. 1995).  There, the court reasoned that plaintiff "had no ongoing relationship with any

of the investors," only met with the investors on one occasion, and "offered no evidence that any

of the prospective investors had any intent" to contract with him.  *Id.*  The Court reasoned that

based on these facts "there was no evidence establishing a reasonable probability that [plaintiff]

would have received economic benefits from the investors."  *Id.*

> a.  EBPHI's Tortious Interference Claim

EBPHI accuses defendants of tortious interference with business expectancy due to

defendants' statement that the NHIE was not psychometrically valid.  ECF No. 1 at 16.

Defendants move for summary judgment on this claim for two reasons: (1) defendants'

statements are protected by the business competition privilege, and (2) there is insufficient

evidence to show that the NHIE comment interfered with the formation of any contract.

> i. Competitors' Privilege

As discussed above, the fact that the parties were competitors at the time of the alleged

tortious conduct is undisputed.  It is also undisputed that neither party created an illegal restraint

on trade, and that both parties were acting to promote their own business interests.  Therefore,

EBPHI can only survive summary judgment on the competitors' privilege issue if it presents

evidence that supports an inference that defendants employed "wrongful means."  As the

*Robinson* decision makes clear, defamation is sufficient to support a finding of wrongful means in the tortious interference context. Thus, a genuine dispute exists as to whether defendants employed wrongful means and whether the business competitor's privilege should apply.

### ii. Proof of Injury

Defendants next argue that they are entitled to summary judgment because EBPHI has no evidence that the NHIE comment interfered with the formation of any particular contract. I agree. In *Klein*, the court dismissed the tortious interference claim as being too speculative even though the plaintiff identified potential individuals with whom he intended to contract and had met with those individuals to discuss potential contracts. *Klein*, 44 F.3d at 1497. Here, EBPHI identifies no individuals with whom they intended to contract but for InterNACHI's interference. Instead, they merely state they saw a drop in the number of people registering to sit for the NHIE following defendants' NHIE comment. While that may be sufficient to establish an inference of injury in other contexts, it is insufficient for a tortious interference with business expectancy claim. EBPHI's evidence proves nothing more than that EBPHI had a "mere hope" that more people would sit for their exam, which is insufficient. *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017). Thus, defendants' motion for summary judgment as to EBPHI's tortious interference with business expectancy claim is GRANTED.

### b. Defendants' Tortious Interference Counterclaim

Defendants allege that ASHI tortiously interfered with its business expectancy when it listed a purportedly false tagline on its website that read "Educated. Tested. Verified. Certified." ECF No. 71 at 19–20. ASHI argues there is no evidence to support an inference that ASHI intentionally used the tagline to interfere with InterNACHI or prevent individuals from doing business with InterNACHI. I agree.

29

Defendants have presented no evidence to support an inference that ASHI intended to interfere with InterNACHI's prospective business expectancy.  The only evidence defendants produce is an exhibit that purports to show that in the year after ASHI included the tagline on its website, ASHI experienced a rise in associate members.  ECF 58-8.  However, even if this evidence supports an inference that the tagline resulted in more people joining ASHI as associates, that evidence does not address the issue of intentionality.  Tortious interference is an *intentional* tort.  Therefore, to survive summary judgment defendants must present evidence that creates a genuine dispute of material fact as to whether ASHI intended to interfere with InterNACHI's future business expectancy, something they have done not here.  The Court notes that even if such intent had been supported by evidence, InterNACHI has presented no evidence to suggest it had anything more than a "mere hope" that the associate members who joined ASHI would have joined InterNACHI but for the tagline.  *Crocs, Inc.*, 248 F. Supp. 3d at 1059.

Accordingly, ASHI's motion for summary judgment on defendants' tortious interference counterclaim is GRANTED.

3. Commercial Disparagement and Trade Libel Claims

Both plaintiffs allege that defendants committed trade libel and commercial disparagement.  Although plaintiffs assert trade libel and commercial disparagement as separate causes of action in their complaints, the parties address the two claims together in their summary judgment briefs.  Accordingly, the Court addresses the claims together as the "commercial disparagement" claim.[3]

---

[3] Although plaintiffs pled these claims as distinct causes of action, they appear to be the same claim.  *See Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1009 (D. Colo. 2000) (Plaintiff filed a single disparagement claim under Colorado law that the court referred to as the "trade libel and business disparagement claim.").  Further, a Westlaw search of the term "trade libel" presents only one Colorado state court case.  In that case, the claims are again referred to jointly.  *People v. Underhill*, 353 P.3d 936, 940 (Colo. O.P.D.J. 2015) ("In this order, the court granted the . . . motion to dismiss and dismissed NLO's defamation claim and corporate disparagement and trade libel claim with prejudice.").

To succeed on a commercial disparagement claim under Colorado law, plaintiffs must prove the following elements: "(1) a false statement, (2) published to a third party, (3) derogatory to the plaintiff's business in general. . . or its quality, and (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages. *Teilhaber Mfg. Co. v. Unarco Materials Storage, a Div. of Unarco Indus., Inc.*, 791 P.2d 1164, 1166 (Colo. App. 1989) (citing *Henderson v. Times Mirror Co.*, 669 F. Supp. 356 (D. Colo. 1987), *aff'd*, 876 F.2d 108 (10th Cir. 1989)).  The *Teilhaber Mfg. Co.* court also stated that "[t]he constitutional protections afforded a defendant in a defamation action are applicable to a defendant in a product disparagement claim."  791 P.2d at 1167 (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984).  Relying on the *Teilhaber Mfg. Co.* court's language, in *TMJ Implants Inc. v. Aetna, Inc.*, the Tenth Circuit wrote, "[w]e believe that the Colorado Supreme Court would not recognize a product-disparagement claim relying entirely on expressions that could not support a defamation claim."  498 F.3d 1175, 1200 (10th Cir. 2007).

### a. ASHI's Commercial Disparagement Claim

Defendants argue they are entitled to summary judgment on ASHI's claim because the underlying statement was not defamatory and can therefore not support a commercial disparagement claim as a matter of law.  I agree.  In Part IV.B.1.a the Court held that the NAMBLA comment is not defamatory because a reasonable person could not believe the comment to be factual.  Thus, based on the rationales in *Teilhaber* and *TMJ* Implants, since the NAMBLA comment is not defamatory, it cannot support a finding of disparagement. Accordingly, defendants' motion for summary judgment as to ASHI's commercial disparagement claim is GRANTED.

      b. EBPHI's Commercial Disparagement Claim

Defendants argue they are entitled to summary judgment on EBPHI's commercial disparagement claim because the NHIE comment is not actionable to support a defamation claim and therefore a commercial disparagement claim, and plaintiff has not demonstrated special damages. I disagree. In Part IV.B.1.b the Court held that (1) although the NHIE comment concerned a matter of public opinion, there was sufficient evidence to support an inference that defendants acted with actual malice, (2) EBPHI presented sufficient evidence to support an inference of special damages, and (3) whether the NHIE comment was false is an issue that must go to the jury. Thus, material factual disputes exist as to both the defamation and commercial disparagement claims, and defendants are therefore not entitled to summary judgment on EBPHI's commercial disparagement claim. Defendants' motion for summary judgment is therefore DENIED.

      4. Colorado Consumer Protection Act Claims

Both plaintiffs also filed claims under the Colorado Consumer Protection Act. Defendants move for summary judgment on both plaintiffs' CCPA claims on two grounds. First, defendants claim that there is no evidence to suggest there has been a significant impact on the public as required under the CCPA. Second, defendants contend that both plaintiffs have presented insufficient evidence of injury as required by the CCPA. ECF No. 59 at 17–18; ECF No. 58 13–14. ASHI also moves for partial summary judgment on its CCPA claim. ECF No. 60 at 8.

The Colorado Consumer Protection Act ("CCPA") is a broad remedial statute "intended to deter and punish deceptive trade practices committed by businesses in dealing with the public." *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D. Colo. 2002). A

person commits a deceptive trade practice when "in the course of the person's business, vocation, or occupation, the person . . . disparages the goods, services, property or business of another by false or misleading representation of fact," and "either knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another."  Colo. Rev. Stat. Ann. § 6-1-105(1)(b), (c), and (h) (West).  To prevail on a CCPA claim plaintiffs must demonstrate

> (1) that defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that [the challenged practice] significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

Due to the CCPA's underlying goal of protecting consumers and the public, plaintiffs are prohibited from bringing purely private causes of action under the CCPA.  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003).  Instead, plaintiffs must show that the challenged practice *significantly impacts the public as actual or potential consumers.  Hall*, 969 P.2d at 235 (emphasis added).  To determine whether a plaintiff has demonstrated significant public impact courts consider the following: "the number of consumers directly affected by the challenged practice; the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998).

This court has considered the public impact issue on numerous occasions.  In *Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.,* the court granted summary judgment because there was insufficient evidence of public impact when the only evidence was

the "self-serving deposition testimony . . . that [the public] generally would likely lose faith" in

the business based on the alleged misrepresentations.  311. F. Supp. 2d 1048, 1115 (D. Colo.

2004).  In *Proffitt v. Cornuke*, the court emphasized that the purpose of the CCPA is to protect

the public, and it was improper to use the CCPA "as a stick for disgruntled business partners or

associated entities to wield against each other in private disputes."  No. CIV.A. 03-CV-00810-

JLK-BNB, 2005 WL 2171860, at *2 (D. Colo. Sept. 7, 2005).  Finally, in *Benton*, this Court

dismissed a CCPA claim and stated,

> The mere fact that displays at trade shows and on websites can be, and presumably are,
> viewed by numerous people is not enough.  There has to be some indication that there
> was a significant impact on the public.  There has to be some indication that these
> misleading representations actually caused defendants some harm.

*Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 5866303, at *6 (D. Colo.

Nov. 19, 2012).

> a. <u>ASHI's CCPA Claim</u>

ASHI contends that defendants violated the CCPA by engaging in deceptive trade

practices; namely, posting misrepresentations about ASHI on InterNACHI's online forum.  The

Court has already found that the hyperbolic protections at issue do not support a defamation

claim.  *See* Part IV.B.1.a.  Even if the NAMBLA comment did support a claim for defamation,

this court has held that "making defamatory statements. . . is not a deceptive trade practice. . . . it

is purely a private wrong."  *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1162 (D.

Colo. 2016).

ASHI's seeking redress under the CCPA for a purely private wrong is not permitted by

law.  ASHI impermissibly attempts to wield the CCPA as a stick against defendants.

Furthermore, even if these statements did constitute a deceptive trade practice, ASHI has

presented no evidence as to how these statements significantly impacted the public.  It is

insufficient to argue that the public was impacted merely because they read or saw the comments.  These comments must have some discernible, significant impact on the public to be actionable under the CCPA.  Thus, ASHI has not presented any genuine dispute of material fact as to this claim.  Defendants' motion for summary judgment is therefore GRANTED.  ASHI's motion for partial summary judgment is DENIED.

  b. EBPHI's CCPA Claim

EBPHI claims that InterNACHI engaged in deceptive trade practices when it posted on its website that the NHIE was not psychometrically valid, but InterNACHI's exam was. Defendants argue that EBPHI has not demonstrated a significant public impact, and EBPHI reiterates the fact that the NHIE comment was made on a public platform.  However, as discussed above, the fact that numerous people heard or saw these statements is insufficient. EBPHI must demonstrate that these allegedly deceptive trade practices caused a substantial public impact.

To establish that the NHIE comment significantly impacted the public, EBPHI points to the fact that twenty-three fewer people took the exam in Florida the year after the comment was made.  The Court finds this evidence insufficient to demonstrate that InterNACHI's deceptive trade practices caused a significant public impact.  The NHIE is a national exam, and the fact that one state in which the exam is offered experienced a decline in test takers is insufficient on its own to demonstrate a significant public impact.  To succeed on a CCPA claim, the law requires EBPHI to show more than that a small percentage of the public may have been impacted.  Even when viewing the evidence in the light most favorable to EBPHI, the Court finds that no genuine dispute exists as to whether the public was significantly impacted.

Accordingly, defendants' motion for summary judgment on EBPHI's CCPA claim is

GRANTED.

     5. <u>Defendants' Lanham Act counterclaim against ASHI</u>

     InterNACHI filed a counterclaim asserting that ASHI's tagline "Educated. Tested.

Verified. Certified." constitutes false advertising under the Lanham Act.  ASHI argues it is

entitled to judgment as a matter of law on this claim because (1) the tagline does not constitute

commercial advertising under the Lanham Act, (2) InterNACHI cannot prove causation or

damages, and (3) InterNACHI has failed to prove materiality.  ECF No. 60.  I address each

argument in turn.

     a. <u>Whether the subject speech constitutes commercial advertising</u>

     To establish a Lanham Act counterclaim, defendants must demonstrate the following:

> (1) that a defendant made material false or misleading representations of fact in
> connection with commercial advertising or promotion of its product, (2) in commerce; (3)
> that are either likely to cause confusion or mistake as to (a) origin, association, or
> approval of the product with or by another, or (b) the characteristics of goods or services;
> and (4) injury to plaintiff

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (internal quotations

omitted).  To be commercial advertising, the speech must be:

> (1) commercial speech, (2) by a defendant who is in commercial competition with
> plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or
> services.  While the representations need not be made in a classic advertising campaign,
> but may consist instead of more informal types of promotion, the representations (4) must
> be disseminated sufficiently to the relevant purchasing public to constitute advertising or
> promotion within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000) (citing *Gordon &*

*Breach Science Publishers, S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1535–36  (S.D.N.Y

1994).

To support its argument that the tagline is not commercial advertising, ASHI relies almost entirely on *Strauss v. Angie's List,* a recent Tenth Circuit case.  951 F.3d 1263.  In *Strauss*, the plaintiff was a tree removal company that advertised on Angie's List, a website that allows consumers to search for various service providers within their geographic areas.  *Id.*  The defendant made the following incorrect statements about the tree removal company: (1) that it had no customer ratings or reviews, (2) had not met criteria required to be listed on the website, and (3) has no local offers to extend to consumers.  *Strauss v. Angie's List, Inc.*, No. 217CV02560HLTTJJ, 2018 WL 5722561, at *14 (D. Kan. Nov. 1, 2018), *aff'd,* 951 F.3d 1263 (10th Cir. 2020).  The court, relying on the *Proctor & Gamble* factors listed above, held these statements did not constitute commercial speech because they did nothing to influence "consumers to buy [Angie's List's] goods or services" as required in *Proctor & Gamble*.  *Id.* While the speech may have had an effect on other tree removal companies, the statements did nothing to further Angie's List's business, and therefore did not constitute commercial speech. *Id.*

Defendants argue that *Strauss* is readily distinguishable, and the Court agrees.  While ASHI's website permits homebuyers to search for ASHI home inspectors in the same way Angie's List allows consumers to search for service providers, such as tree removal companies, that is where the similarities end.  The statements Angie's List made in *Strauss* were one-time statements about a single service provider.  The statements at issue in this case—ASHI's tagline—is not speech about one of ASHI's members, it is speech that purportedly applies to every ASHI member, and therefore it is a statement about ASHI as an association.  To couch this in *Proctor & Gamble* terms, it is reasonable to infer that ASHI's tagline—which promotes its members as educated, tested, verified, and certified—influences home inspectors to purchase an

ASHI membership because they will be represented to homebuyers as educated, tested, verified, and certified.  Therefore, unlike the statement at issue in *Strauss*, this statement benefits ASHI directly and satisfies the *Proctor & Gamble* test for commercial advertising.

b. Whether defendants have proven injury or damages

Plaintiff next argues summary judgment is appropriate because the causal link between the allegedly false statement and the injury is too attenuated.  Defendants argue they are entitled to an inference of harm because the parties operate in a two-player market, and any statement that benefits one party necessarily harms the other.  ECF No. 71 at 13.  In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the Supreme Court stated that a plaintiff suing under the Lanham Act "ordinarily must show that its economic or reputational injury flows directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from plaintiff." 572 U.S. 118, 134 (2014).

In *Hutchinson*, the Tenth Circuit in dicta stated that there is a presumption of injury "when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented conduct."  *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000).  In *General Steel Domestic Sales, LLC v. Chumley*, this court considered the Tenth Circuit's statement in *Hutchinson* and stated that the

> proposition stated in *dicta* in *Hutchinson*—that a presumption of injury can be drawn if the plaintiff and defendant are direct competitors regarding the product in question—as allowing a plaintiff who directly competes with a defendant to show an injury to itself with some lesser quantum of proof than a non-competitor might be required to show. *However, it is still necessary for the competitor to show some evidence of causation and injury, not to merely rely entirely on a presumption based on competition.*

129 F. Supp. 3d 1158, 1178–79 (emphasis added).

Here, there is no dispute that ASHI and InterNACHI are direct competitors in the home inspector membership service industry.  Defendants, however, still "must show some evidence of

causation and injury," which they have not done.  *Id.*  To establish injury, defendants state that "ASHI experienced a spike in new associate members" after including the tagline on its website. ECF No. 71 at 14.  However, defendants have not demonstrated any loss suffered by InterNACHI, nor that any of the alleged members who joined ASHI had any knowledge of InterNACHI's membership program.

Defendants urge this Court to infer that InterNACHI was necessarily injured when new associates joined ASHI after it posted the tagline to its website.  However, defendants' own positions undermine that argument.  The Court cannot presume harm because defendants admit that the associates who joined ASHI might not have been welcome at InterNACHI even if they had wanted to join.  Defendants argue that the allegedly false tagline "would obviously help a newbie that has no education, no testing, no verification, and no certification to capture new business from homeowners using the ASHI 'Find an Inspector' tool."  ECF No. 71 at 14. However, defendants concede that InterNACHI "never promotes uncertified members to the public."  *Id.*  Based on defendants' arguments, the Court concludes that ASHI was the only membership service in this two-player market that would allow novice home inspectors to gain experience and be advertised to homeowners prior to certification.  In addition to presenting no evidence that the tagline caused InterNACHI any injuries, defendants produce evidence suggesting that InterNACHI's own protocols prevented them from gaining associate members. ASHI did not "withhold trade from InterNACHI" by serving the "newbie" clientele InterNACHI refused.  *Lexmark Intern., Inc.*, 572 U.S. at 134.  The Court therefore finds that no reasonable jury could find that defendants were injured by plaintiff's allegedly false commercial advertising. ASHI's motion for summary judgment on defendants' Lanham Act counterclaim is GRANTED.

## <u>ORDER</u>

1.      Defendants' amended motion to strike, ECF No. 91, is GRANTED in part and DENIED in part.  Defendants' initial motion to strike, ECF No. 84, is MOOT.

2.       Defendants' motion for summary judgment, ECF No. 58, is GRANTED.

3.       Defendants' motion for summary judgment, ECF No. 59, is GRANTED in part and DENIED in part.  Defendants' motion is denied as to the defamation and commercial disparagement claims.  Defendants' motion is granted as to the Colorado Consumer Protection Act and tortious interference with business expectancy claims.

4.      Plaintiff ASHI's motion for partial summary judgment, ECF No. 60, is GRANTED in part and DENIED in part.  Plaintiff's motion is granted as to defendants' tortious interference and Lanham Act counterclaims.  It is denied as to plaintiff's defamation and CCPA claims.

5.      Plaintiff EBPHI's motion for partial summary judgment, ECF No. 61, is GRANTED in part and DENIED in part.  EBPHI's motion is granted on the issue of whether the speech is defamatory per se, and it is denied as to the issues of liability and damages.

        DATED this 10th day of February, 2021.


                                        BY THE COURT:



                                        _____
                                        R. Brooke Jackson
                                        United States District Judge